IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| SCOTT WOMBOLT,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD, et al.,<br><br>Respondents. | Cause No. CV 15-57-BU-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATIONS OF THE<br>UNITED STATES MAGISTRATE<br>JUDGE |

Before the Court is Petitioner Scott Wombolt's application for writ of habeas corpus under 28 U.S.C. § 2254. On December 1, 2011, Wombolt received a sentence of 45 years with 15 years suspended after he pled no contest to three counts of distributing dangerous drugs to minors

On January 27, 2016, Wombolt was ordered to show cause as to why his petition should not be dismissed as time-barred. (Doc. 5). Having considered Wombolt's response, the Court finds Wombolt's petition is time barred and must be dismissed.

## I. Federal Statute of Limitations

A one-year limitations period applies to Wombolt's petition, because no reason exists to apply one of the other statutory "trigger" dates. *See*, 28 U.S.C. § 2244(d)(1). Because he did not file a timely notice of appeal in state court, his

1

conviction became final 60 days after entry of the written judgment, that is, on January 30, 2011. Mont. R. App. P. 4(5) (b) (i) (2008); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012). Consequently, Wombolt was required to file his § 2254 petition on or before Wednesday, January 30, 2013. He did not file his petition, however, until October 8, 2015, more than two years and eight months too late.[1]

Federal time is tolled while a state prisoner has a "properly filed application for State postconviction or other collateral review" pending in state court. 28 U.S.C. § 2244(d)(2). Both Wombolts's petition for out of time appeal and petition for postconviction review were not filed until June and November of 2013, respectively. This was well after either federal filing deadline had elapsed.

The Order to Show Cause explained to Wombolt how he might be able to make the showing necessary to avoid the one year period of limitations. (Doc. 5 at 5). In response, Wombolt states that his trial counsel was ineffective at sentencing and didn't explain the laws surrounding appeal or potential time-bars. (Doc. 8 at 2-4). Wombolt also asserts there was insufficient evidence to sustain a conviction and that he possesses newly discovered evidence that proves his actual innocence.

---

[1] Wombolt did file a motion to withdraw his guilty plea in November of 2012. Giving Wombolt the benefit of tolling of the 33 days that passed while this motion was pending would result in a filing date of March 4, 2013. Even using this later date, Wombolt's federal petition was still filed well over two years late.

*Id.* at 4-5.

## a. Assistance of Counsel

Wombolt claims his trial counsel was ineffective and failed to fully explain potential issues surrounding appeal or statutory time-bars. Wombolt advanced similar arguments in his postconviction petition. The state trial court elected to address Wombolt's claims on the merits, despite the fact that the petition was apparently untimely. See, *State v. Wombolt*, No. DA 14-0705, Br. Appellee, at 4 (March 5, 2015) (citing to trial court order). The court concluded Wombolt's allegations of ineffective assistance of trial counsel were "without merit on their face" and that Wombolt provided no evidentiary support for his claim. *Id.* Wombolt was unable to demonstrate that trial counsel's performance was deficient or unduly impaired his defense. *Id.* The Montana Supreme Court concurred, finding Wombolt's conclusions and speculations regarding his attorney's performance insufficient to establish that his attorney's performance fell below an objective standard of reasonableness. *State v. Wombolt*, No. DA 14-0705, Or. at 3, ¶6 (Mont. filed June 23, 2015). Wombolt presents nothing to this Court that dispels the weak nature of his ineffective assistance of counsel claim.

It is true that in certain instances, a petitioner may be entitled to equitable tolling due to egregious attorney misconduct. This relief is available, however, only if the petitioner shows: (1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance existed that prevented a timely filing. *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010). Here, Wombolt would need to show that his trial counsel's misconduct prevented him from filing a timely federal petition. *See Randle v. Crawford*, 604 F. 3d 1047, 1058 (9th Cir. 2010) ("[C]ounsel's incorrect advice with respect to the time frame in which to file a state habeas case did not prevent Randle from filing his federal petition on time."). Attached to Wombolt's response to the order to show cause is a letter from his trial counsel. (Doc. 8-1 at 2). This letter does little to further an ineffective claim or establish that somehow his trial counsel prevented Wombolt from timely filing a petition in this Court. From the information provided, Wombolt has not even established that his trial counsel was negligent. Even assuming Wombolt was able to establish attorney negligence, negligence, unlike misconduct, does not constitute an extraordinary circumstance. *See Holland*, 130 S. Ct. at 2564; *Randle*, 604 F. 3d at 1058. Wombolt has not established a valid basis for equitable tolling.

**b. Newly Discovered Evidence/Actual Innocence**

Wombolt cites *Schlup v. Delo*, 513 U.S. 298 (1995), for the premise that the newly discovered evidence he provided in his initial petition, and the doubt he raises about the sufficiency of the evidence against him, should allow him to pass through the gateway created by *Schlup* and, in so doing, excuse the time bar. Wombolt also suggests that because this evidence is newly discovered, 28 U.S.C. §

2244(d)(1)(D), should come in to play and trigger the statute of limitations analysis under that section. He is wrong on both counts.

The first item of newly discovered evidence Wombolt references is an affidavit from Laurie Hodges dated July 1, 2014, explaining her knowledge that Wombolt's bedroom was broken into by teenagers who were "looking to steal [Wombolt's] pills and prescription medications." (Doc. 1-1 at 1). She also states her belief that Wombolt handled his medications in a responsible manner and kept a regular inventory of them. *Id.* Second, Wombolt references the affidavit of his son, Brandon, also dated July 1, 2014, who attests that Wombolt never sold him his medication. And Brandon states that the statement he gave to the contrary was false. *Id.* at 2. Next Wombolt presents a February 14, 2013, letter from Troy Warling, FNP, of the Advanced Pain and Spine Institute, who opines, "[w]hile taking medications such as methadone, Klonopin and Xanax it is likely that one's memory would be impaired." *Id.* at 3. Warling is not of the opinion that memory issues would continue after discontinuing the medications although it would be possible for one's memory to be impaired during withdrawal from those medications. *Id.*

Finally, Wombolt attaches the cover page of a "Petition for Plain Air (sic) Review" that he filed in the trial court on September 10, 2014. In this document Wombolt asserts that on April 28, 2011, Reno Puccinelli and Cole Kramer were at

his residence for 7 to 9 hours when they should have been in school. (Doc. 8-1 at 1). It is Wombolt's belief that the sole purpose of these young men being present at his home was to steal his pain medication. *Id.* According to Wombolt, on April 29, 2011, he discovered 56 of his prescription pills were missing. *Id.* Reno Puccinelli passed away presumably from an overdose. Wombolt contends, however, that there was insufficient evidence to establish that he was the source of the substance which brought upon Puccinelli's death. (Doc. 8 at 3).[2]

Wombolt seems to argue that he should be entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(D), which provides that the limitation period should run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This argument is unpersuasive. First, Laurie Hodges' purported knowledge regarding the manner in which Wombolt kept and inventoried his medication was available to Wombolt prior to the initiation of the criminal proceedings against him. Likewise, the statement from Wombolt's son could have been challenged during the initial criminal proceedings because it would have been known in 2011 whether or not Wombolt sold medication to his son. It is unclear exactly why the letter from Warling is attached, presumably it is in support of Wombolt's contention that he was "not in his right mind" during his change of plea or sentencing. *See*, Doc. 8 at

---

[2] Wombolt was not charged for the death of Puccinelli.

1. This fact, even if true, does little to further Wombolt's claim of actual innocence. Likewise, it could have been discovered in relative proximity to the resolution of the criminal case. Because Wombolt could have learned all of this information years ago through the exercise of reasonable diligence, 28 U.S.C. § 2244(d)(1)(D) is inapplicable to the present case.

In order to satisfy the actual innocence requirements of *Schlup*, Wombolt must demonstrate that in light of the new evidence, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. This new evidence must be reliable, and the reviewing court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup,* 513 U.S. at 332. This court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell,* 547 U.S. 518 at 538 (2006) (internal quotation marks and citation omitted). "Based on this total record, the Court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.' " *Id.* (quoting *Schlup,* 513 U.S. at 329).

The affidavit of Hodges speaks to her personal knowledge surrounding the manner in which Wombolt kept his medication. Nowhere in the affidavit does she say on the night of Puccinelli's passing she had first-hand knowledge that

7

Wombolt's medication was stolen. This does little to further his claim of actual innocence. The affidavit from Wombolt's son, Brandon, has its own problems. Due to the father-son relationship between the two, the probable reliability of the information contained in the affidavit is called into question. Also, the timing of Brandon's initial statement, given immediately after his friend had passed away, seems to lend some credence to the reliability of the original statement as opposed to the affidavit prepared years after his father had been sentenced to a lengthy prison term.

The letter from Warling is general in nature and seems to apply, if at all, to Wombolt's state of mind during his change of plea and sentencing hearings. It has nothing to do with establishing Wombolt's actual innocence. Wombolt has failed to clear the extremely high hurdle set by *Schlup*. This is not an "extraordinary" case that would warrant setting aside the time-bar. *Schlup*, 513 U.S. at 324-327 (emphasizing "in the vast majority of cases, claims of actual innocence are rarely successful."); see also *House*, 547 U.S. at 538 (the *Schlup* standard is demanding and seldom met.). Wombolt has failed to make a sufficient showing of actual innocence to allow this Court to hear his time-barred claims on their merits.

## II. Conclusion

Wombolt's claims are untimely. *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012). Wombolt's failure to comply with the federal limitations period

8

cannot be excused. His petition should be dismissed as time-barred.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). None of the claims advanced by Wombolt appear to make a substantial showing that he was deprived of a constitutional right. A certificate of appealability should be denied because the petition is time-barred, no reasonable jurist would find his claims timely, and there is no basis to encourage further proceedings.

## RECOMMENDATION

1. Mr. Wombolt's Petition (Doc. 1) should be DISMISSED WITH PREJUDICE as time-barred without excuse.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Wombolt may object to this Findings and Recommendation within 14 days.[3] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Wombolt must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 24th day of March, 2016.

Jeremiah C. Lynch
United States Magistrate Judge

---

[3] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.